UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMPSON PACIFIC CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN INTERNATIONAL GROUP, INC., et al., <br><br> Defendants. | Case No. 15-cv-01091-WHO <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 25 |

Defendants American International Group, Inc., AIG Specialty Insurance Company, and AIU Insurance Company (collectively, "AIG") issued an insurance policy that covered entities working on a construction project for the Los Angeles Unified School District ("LAUSD"), including plaintiff Thompson Pacific Construction, Inc. ("Thompson"). After numerous lawsuits involving the project were brought and then settled, one of Thompson's subcontractors, Southern California Drywall ("SoCal"), sought to re-litigate several claims against Thompson arising out of the LAUSD project. Thompson brings a breach of contract action against AIG in connection with SoCal's lawsuit, arguing that AIG breached its duty to defend or indemnify Thompson in the action. AIG moves to dismiss the First Amended Complaint ("FAC") on three grounds: first, that all claims are barred by res judicata; second, that Thompson never tendered the defense to it; and third, that the FAC fails to allege a valid duty to defend or indemnify under the policies.

Res judicata does not apply in this case, and on the record before me Thompson's claims are not barred by the prior lawsuit between the parties. I also reject AIG's argument based on Thompson's alleged failure to tender claims; AIG relies upon evidence that is not properly considered on a motion to dismiss. However, I agree with AIG that the allegations in the FAC, when considered along with the underlying insurance contract, do not adequately plead that AIG

1  had a duty to defend or indemnify Thompson.  Accordingly, I GRANT AIG's motion to dismiss
2  with leave to amend.

## BACKGROUND

4  Thompson entered into a contract with LAUSD for construction work performed on a
5  school site, including an area called the Southeast Area Learning Center ("SELC").  *See* First
6  Amended Complaint ("FAC") ¶ 14 (Dkt. No. 20); TIG Cross-Compl. ¶ 12 (Dkt. No. 28-1).
7  Thompson hired various subcontractors, including SoCal, to assist with this project.  FAC ¶ 17;
8  SoCal Compl. ¶ 9 (Dkt. No. 28-3).  Thompson and other LAUSD contractors were covered by a
9  general liability insurance policy  (the "TIG Policy") that was issued by TIG Insurance, with an
10  excess insurance policy (the "AIU Policy") issued by AIU.  TIG Cross-Compl. ¶¶ 7-10.

11  Issues arose during construction, and in 2006 the LAUSD sued Thompson, who filed a
12  cross-complaint (the "LAUSD lawsuit").  FAC ¶ 14; Mot. 3 (Dkt. No. 25).  TIG accepted the
13  defense of the LAUSD lawsuit on Thompson's behalf but later brought a declaratory relief action
14  against Thompson, requesting that the court declare that it was not required to defend or indemnify
15  Thompson in the underlying action between the LAUSD and Thompson.  FAC ¶ 15.  Thompson
16  filed a cross-complaint against TIG and AIU ("TIG Cross-Complaint"), claiming that both had a
17  duty to defend it in the action.  *Id.* ¶ 16; *see also* TIG Cross-Compl.

18  SoCal also sued Thompson and brought causes of action for breach of contract and failure
19  to pay for materials and services (the "SoCal lawsuit").  According to the FAC, "SoCal claimed
20  that [Thompson] accidently [sic] damaged both the sheetrock SoCal had installed on the building
21  (which it had to remove and replace), and that [Thompson] accidently [sic] damaged SoCal's sheet
22  rock which it had not yet installed on the building."  FAC ¶ 18.  TIG defended this action as well.
23  *Id.* ¶ 19.

24  The declaratory relief actions, the SoCal lawsuit, the LAUSD lawsuit, and other suits
25  involving the LAUSD were coordinated into *In re School District Litigation*, Orange County
26  Superior Court Case No. JCCP 4517 (the "School District Litigation).  *Id.* ¶ 20.

27  In 2011, Thompson settled the SoCal lawsuit.  Dkt. No. 28-12, Ex. A; FAC ¶ 21.  Or so it
28  thought.  In 2012, the School District Litigation settled, TIG exhausted its policy limits, and

Thompson dismissed its claims with prejudice in the TIG lawsuit. FAC ¶¶ 21-22.

After the settlement of the School District Litigation, according to the FAC, "SoCal recommenced prosecution of its action against [Thompson] and continued to seek recompense for damages it alleged [Thompson] caused to SoCal's property." *Id.* ¶ 23. The FAC states that Thompson was insured under Policy No. 246-51-40, which was issued by defendant AIU Insurance Company, and under Policy No. 8854807, which was issued by defendant AIG Specialty. *Id.* ¶¶ 8-9. The defendants refused to defend Thompson in the recommenced action. *Id.* ¶¶ 27-30.

Thompson's FAC brings three causes of action against AIG: breach of contract against AIG and AIG Specialty, breach of contract against AIG and AIU Insurance Company, and breach of the implied covenant of good faith and fair dealing. I heard AIG's motion to dismiss on June 17, 2015.

## LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) shall be granted where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing these motions, courts view all of the pleaded facts as true and in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). A complaint must contain a short and plain statement that shows a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (2009) (internal quotations omitted). In ruling on a motion to dismiss, the court is not obligated to accept as true unreasonable inferences, conclusory statements, or allegations that "contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. REQUESTS FOR JUDICIAL NOTICE

In support of its motion, AIG requests that I take judicial notice of several documents.

3

Dkt. No. 28.  In general, it is improper for courts to take judicial notice of evidence in ruling on a motion to dismiss unless the evidence is submitted as part of the complaint, is of undisputed authenticity and is relied upon in the complaint, or is otherwise subject to notice under Federal Rule of Evidence 201.  *Wynn v. Chanos*, No. 14-CV-04329-WHO, 2014 WL 7186981, at *4 (N.D. Cal. Dec. 16, 2014).  Under Rule 201, a court may take judicial notice of evidence that is generally known within its jurisdiction or that can "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201.

AIG's requests for judicial notice consist largely of court documents filed in other cases and are not objected to by Thompson.  *See* Dkt. No. 28.  Court filings, as publicly filed documents, are the proper subject of judicial notice, and I GRANT AIG's request with respect to requests 1, 2, 4-7, and 9-13 to the extent that I rely on them in this Order.  *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).[1]

Thompson objects to AIG's third request for judicial notice, asserting that the document inadvertently discloses attorney-client communications.  *See* Dkt. No. 31.  The third request for judicial notice includes an email from Thompson's attorney to Thompson's insurance broker that instructs the broker to tender the SoCal claim.  Dkt. No. 28-3 at 5-10.  I need not determine whether the document discloses privileged information because the contents of the document are not the proper subject of judicial notice.  The email is not a matter of public record, is not attached to or relied upon in the complaint, and is not otherwise noticeable.[2]  Therefore, the portion of AIG's third request for judicial notice that is email correspondence is DENIED.  I take notice of the remainder of AIG's third request, which consists of the complaint against Thompson brought by SoCal and is noticeable under Rule 201 as a publicly filed court document.

Thompson also initially objected to the TIG and AIU Policies that were submitted as

---

[1] To the extent that I do not rely on these documents, AIG's request for judicial notice is DENIED as moot.

[2] Although AIG submits the emails as an attachment to a declaration that was filed in court, it seeks to rely on the truth of the emails and does not simply request notice that the emails were filed.  The fact that otherwise un-noticeable documents are attached to a declaration filed in another court does not make them suitable for judicial notice under Rule 201.  *See*, e.g., *Franklin v. Prospect Mortgage, LLC*, No. 2:13-CV-00790 JAM-AC, 2013 WL 6423389, at *2 (E.D. Cal. Dec. 9, 2013).

1   AIG's eighth request for judicial notice (Dkt. Nos. 26-7, 26-8, AIU pages 125-221), disputing

2   their authenticity and requesting that AIG declare under oath that the documents it submitted are

3   the proper policies. *See* Dkt. No. 31 at 2; Oppo. 8. Counsel for AIG reasserted that the documents

4   were authentic during oral argument, counsel for Thompson did not seriously contest it, and the

5   FAC both refers to and relies upon the policies. Therefore, the eighth request for judicial notice is

6   GRANTED.

**II. RES JUDICATA DOES NOT BAR THOMPSON'S ACTION**

AIG argues that Thompson's claims are barred by res judicata and should be dismissed. Mot. 12-15. It contends that the initial action for declaratory relief in the School District Litigation, set forth in the TIG Cross-Complaint, involved the same claims at issue here: AIG's duty to defend Thompson under the AIU Policy. *Id.* at 13.

Federal courts apply state laws of claim preclusion to judgments of courts issued by that state. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Under California law, "[r]es judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *In re Estate of Redfield*, 193 Cal. App. 4th 1526, 1534 (2011). In determining whether res judicata bars a second suit, courts look to (i) whether there was a final judgment on the merits; (ii) whether the issue decided in the prior adjudication is identical to the one presented in the subsequent litigation; and (iii) whether the party against whom the principle is invoked is a party or in privity with a party to the prior adjudication. *Id.* at 1534.

Here, res judicata does not apply. The prior dismissal was filed in the LAUSD litigation and this case concerns the SoCal lawsuit. The claims in the FAC are not identical to the claims that were dismissed in the TIG Cross-Complaint.

The TIG Cross-Complaint describes the underlying "Action" as *Los Angeles Unified School District v. Thompson Pacific Construction, Inc. et al.*, Los Angeles County Superior Court Case No. BC359758. TIG Cross-Compl. ¶ 14. It states that "[i]n the Action the LAUSD alleges various construction defects relating to . . . the SELC project." *Id.* The TIG Cross-Complaint requests several judicial determinations, including:

5

> . . . whether AIU is or was obligated to defend [Thompson] in connection with or arising out of the SELC Project in the Action. [Thompson] contends that AIU is required to defend it in the action on the claims arising out of the SELC project. AIU denies any obligation whatsoever in connection with the Action to provide insurance benefits to [Thompson] under the Excess Policy issued by AIU for the SELC project.

*Id.* ¶ 45. Specifically, the TIG Cross-Complaint "desire[d] a judicial declaration of its rights under the Excess Policy, including but not limited to a declaration that, upon exhaustion of the TIG Policy limits, AIU is obligated to provide [Thompson] with insurance benefits in connection with the SELC project." *Id.* ¶ 46. It sought to determine the parties' "respective rights and obligations arising out of the Excess Policy in connection with the Action and the SELC project." *Id.* ¶ 47. The TIG Cross-Complaint made identical requests regarding AIU's duty to indemnify. *See id.* ¶¶ 55-58. Thompson dismissed all claims against TIG and AIU in the TIG Cross-Complaint by filing a request for dismissal of those claims in the coordinated School District Litigation, where the TIG Cross-Complaint was filed. Dkt. No. 28-2.

Although this action involves the same parties and the duty to defend or indemnify under the same insurance policy, it involves a different underlying case: *Southern California Drywall Company, Inc. v. Thompson Pacific Construction Company, et al.*, Los Angeles County Superior Court Case No. BC363065. FAC ¶ 17. The duty at issue is AIU's duty to defend and indemnify Thompson in the case involving SoCal, what it describes as the "underlying action" that was "recommenced" after the School District Litigation settled. *Id.* ¶¶ 17, 23. Moreover, the FAC does not request declaratory relief. Instead, it brings causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

AIG's argument fails to consider that the duty to defend in the SoCal case is separate from the duty to defend in the TIG Cross-Complaint over the LAUSD litigation. The School District Litigation cases were coordinated, not consolidated. AIG's duty to defend Thompson in each respective case may differ significantly depending on the facts. Unlike the case of *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914 (9th Cir. 2012) to which AIG cites (and which is determinative on preclusion issues under federal, and not California, law), there is no "transactional nucleus of facts" on which Thompson could have requested declaratory relief as to

AIG's duty to defend it in each separate suit in the School District Litigation because the duty to defend or indemnify would depend upon the different underlying facts in each lawsuit brought against Thompson. The claims in the TIG Cross-Complaint and in the FAC are different. Res judicata does not bar Thompson from bringing the claims in the FAC.

## III. TENDER CORRESPONDENCE

AIG argues that Thompson did not tender the claims at issue, precluding any breach of duty under the AIU Policy. *See* Mot. 15-16. Because I do not take notice of the tender correspondence, there is no evidence or pleading to support AIG's argument that the complaint should be dismissed because Thompson did not actually tender the claim.

## IV. DUTY TO DEFEND OR INDEMNIFY

AIG contends that the FAC fails to allege that AIG breached a duty to defend or indemnify Thompson. Mot. 15-16. It asserts that the AIU Policy disclaims any duty to defend, that there is no duty to indemnify Thompson because the SoCal claims do not involve "property damage," and that the FAC does not assert any other viable claims of liability that would be covered by the AIU Policy. *Id.* at 16.

The TIG Policy covers liability for damages arising from "bodily injury" and "property damage." Dkt. No. 28-8 at 35. "Property damage" does not include "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out those operations." *Id.* at 37.

The AIU Policy states that the insurer is "not [] obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured." Dkt. No. 28-9 at 7. AIG points to this provision to argue that Thompson's claims based on the failure to defend must be dismissed. Mot. 16. Thompson does not address this argument, stating only that it objects to the authenticity of the AIU Policy and that the Court cannot consider it. Because the clear language of the AIU Policy disclaims the duty to defend, and because Thompson has not asserted otherwise, the FAC's claims based on breach of this duty fail to state a claim for breach of contract based upon the duty to defend.

The question is whether AIG has a duty to indemnify Thompson. Both parties

1  acknowledge that the AIU policy does not create a duty to indemnify for damages caused by a
2  breach of contract, but only for sums that Thompson "becomes legally obligated to pay as
3  damages because of . . . 'property damage.'" Dkt. No. 28-8 at 35; Mot. 16-17; Oppo. 9-10. They
4  dispute whether the FAC adequately pleads that the SoCal action involves "property damage" that
5  is covered by the AIU Policy.

6  The FAC states that the SoCal Complaint included a claim for "compensation for property
7  damage to SoCal's drywall at the [SELC] Project [Thompson] was constructing for LAUSD
8  which, SoCal claimed, was caused by [Thompson]." FAC ¶ 17. It claims that when SoCal
9  recommenced its action against Thompson, it again sought "recompense for damages" to its
10 property. *Id.* ¶ 23.

11 Under California law, the "[t]he obligation to indemnify arises when the insured's
12 underlying liability is established." *Prof'l Sec. Consultants, Inc. v. U.S. Fire Ins. Co.*, No. CV 10-
13 04588 SJO SSX, 2010 WL 4123786, at *3 (C.D. Cal. Sept. 22, 2010). The FAC alleges that
14 Thompson "was damaged by incurring costs to mitigate SoCal's claims and by having to pay
15 SoCal to resolve its claim." FAC ¶ 28. Thompson allegedly paid $600,000 "to resolve the
16 underlying action and to mitigate its damages therefrom." *Id.* ¶¶ 29-30.

17 The FAC falls short of stating a claim that AIG breached its duty to indemnify for several
18 reasons. First, although it appears from the allegations that Thompson resolved the litigation
19 involving SoCal and already incurred costs to pay SoCal as damages, it does not explicitly state
20 this.

21 Second, Thompson has not clearly identified what claims SoCal brought or is currently
22 bringing that would give rise to a duty to indemnify. The only source of Thompson's liability that
23 the FAC identifies is the initial SoCal lawsuit that was allegedly "recommenced." However,
24 because this suit was allegedly settled, it is unclear whether the most recent claims that SoCal
25 brought against Thompson relate to a breach of the Settlement Agreement (which is probably not
26 covered by the AIU Policy), are new claims, or are a revival of past breach of contract claims that
27 gave rise to liability for property damage.

28 Third, to the extent that the FAC alleges that the operative complaint establishing liability

8

for property damage is the prior SoCal Complaint, it has not pleaded with sufficient particularity that the SoCal lawsuit involved claims for property damage. On this point the SoCal Complaint brings causes of action for breach of contract, enforcement of stop notice, two common counts for materials and services and their reasonable value, and recovery under a contractors' license bond and payment bond. *See* Dkt. No. 28-3 at 13-21. There are no causes of action in the SoCal Complaint that plead property damage, and Thompson does not argue otherwise. *Id.*

That said, courts have rejected the contention that insurance policies covering only property damage can never cover claims for breach of contract. *See Vandenberg v. Superior Court*, 21 Cal. 4th 815, 839 (1999) (stating that coverage depends upon "[t]he nature of the damage and the risk involved, in light of particular policy provisions."). If the SoCal Complaint and lawsuit involved property damages, AIG's duty to indemnify may be triggered. The FAC states that "[d]iscovery showed that SoCal's claimed [sic] as part of its damages in the underlying action that, among other things, [Thompson] damaged SoCal's property, specifically the sheetrock SoCal was to install on the building." FAC ¶ 18. In support of this allegation, Thompson points to the bill of particulars submitted in the underlying SoCal case. Oppo. 9. This lists water damage and "additional labor due to the leaking roof" as damages in its requested relief. *See* Dkt. No. 28-3 at 29.

Although this one fact may suffice to show that AIG would have had a duty to defend in the prior case, it does not demonstrate that AIG had a duty to indemnify after the fact in that case.[3] That SoCal at one point alleged property damages is far attenuated from the current duty to indemnify, given the fact that the original SoCal lawsuit was purportedly resolved and dismissed, *see* Dkt. No. 28-6, and that the most recent dispute with SoCal was also apparently resolved. Standing alone, this allegation does not establish a plausible claim for breach of the duty to indemnify.

---

[3] AIG also argues that exclusion j(5) of the TIG Policy excludes property damage to real property on which contractors or subcontractors perform operations. Mot. 17-18. AIG argues that sheetrock becomes real property once installed. Reply 7. This argument is unpersuasive. AIG cites no authority for that proposition, but even if it had, the FAC contends that SoCal alleged damage to both sheetrock that was already installed and sheetrock that was not yet installed.

1   At the hearing, Thompson's counsel addressed several of the ambiguities in the FAC and
2   provided context for the action. He stated that although the parties attempted to dismiss the SoCal
3   lawsuit, it was never actually dismissed.[4] He also provided more information about the
4   circumstances surrounding the alleged property damage, and affirmed that the recommenced
5   lawsuit has now been settled. This information indicates that Thompson may have a viable claim
6   for relief, but it needs to include the information in an amended complaint. As drafted, the FAC
7   does not serve its purpose to give AIG "fair notice of what the ... claim is and the grounds upon
8   which it rests." *Iqbal*, 556 U.S. at 698-99.[5]

9   Absent specific allegations describing what causes of action brought by SoCal give rise to
10  a duty to defend, and what potential damages would give rise to a duty to indemnify, the FAC
11  does not adequately plead a theory by which AIG would be required to defend or indemnify
12  Thompson in the "recommenced" SoCal lawsuit. For these reasons, the FAC fails to state a
13  plausible basis for liability and for breach of the duty to indemnify.[6]

## CONCLUSION

Thompson's First Amended Complaint is DISMISSED with leave to amend. If Thompson wishes to file a second amended complaint, it should do so by July 28, 2015.

**IT IS SO ORDERED**.

Dated: July 8, 2015

WILLIAM H. ORRICK
United States District Judge

---

[4] Although counsel argued that the lawsuit was never actually dismissed because the court found the settlement to be too vague, the evidence appears to contradict this and show that the court granted a motion to enter the settlement agreement as a judgment. *See* Dkt. No. 26-6.

[5] At the hearing, counsel for AIG claimed that the FAC fails to allege that the second SoCal lawsuit was tendered to it, and counsel for Thompson admitted that he did not properly tender the recommenced claim to AIG. The issues of a failure to *allege* tender, and of failure to actually re-tender claims, were not briefed. AIG's motion primarily focuses on Thompson's failure to actually tender the defense in its opening brief, and not failure to allege tender. Because I need not reach this issue in resolving the motion, I will not address it. However, I note that this may be an issue that Thompson may attempt to remedy if it chooses to amend the FAC.

[6] Because the FAC fails to allege sufficient facts giving rise to a duty to defend or a duty to indemnify, Thompson's other claim for breach of the implied covenant of good faith and fair dealing also fails.

10